IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

WILFREDO LOPEZ PADUA, :
:
    Plaintiff, :
:
v. : Civil Action No. 16-1027-RGA
:
NANCY A. BERRYHILL, Acting :
Commissioner of Social Security, :
:
    Defendant. :

## MEMORANDUM OPINION

Wilfredo Lopez Padua, Middletown, Delaware; Pro Se Plaintiff.

Nora Koch, Acting Regional Chief Counsel Social Security Administration, and Patricia Stewart, Assistant Regional Counsel, Office of the General Counsel, Philadelphia, Pennsylvania; David C. Weiss, United States Attorney for the District of Delaware, Wilmington, Delaware; Heather Benderson, Special Assistant United States Attorney, Office of the General Counsel, Philadelphia, Pennsylvania, Attorneys for Defendant.

March *V*, 2018
Wilmington, Delaware

*signature:* Richard G. Andrews

**ANDREWS, U.S. District Judge:**

Plaintiff, Wilfredo Lopez Padua, who appears *pro se*, appeals the decision of Defendant Nancy A. Berryhill, Acting Commissioner of Social Security, denying his application for disability insurance benefits under Title II of the Social Security Act. *See* 42 U.S.C. §§ 401-434. Jurisdiction exists pursuant to 42 U.S.C. § 405(g). Presently pending before the Court are cross motions for summary judgment filed by Lopez and the Commissioner. (D.I. 12, 13). Briefing is complete.

## I. BACKGROUND

### A. Procedural History

Lopez protectively filed for disability insurance benefits on July 13, 2013, alleging disability as of March 5, 2012. (D.I. 9-2 at 21). His application was initially denied on October 2, 2013, and upon reconsideration on December 27, 2013. (*Id.*). Two administrative hearings were held before an Administrative Law Judge, the first on November 14, 2014, and the second on April 15, 2015.[1] (*Id.* at 36-71). Testimony was provided by Lopez and a vocational expert during the second hearing. The ALJ issued a decision on May 6, 2015, finding that Lopez was not disabled. (*Id.* at 21-31). He sought review by the Appeals Council, submitted additional evidence, and his request was denied on September 9, 2016, making the ALJ's decision the final decision

---

[1] The first hearing explained how the review process works and advised Lopez of his right to be represented by an attorney or non-attorney of his choice.

1

of the Commissioner.² (*Id.* at 2-4). On November 4, 2016, Lopez filed the instant action seeking review of the final decision. (D.I. 1).

### B. Plaintiff's Testimony

Lopez was 34 years old when he testified at the April 2015 hearing. (D.I. 9-2 at 41). He is 5'10" and weighs 300 pounds. (*Id.*). Lopez is married and lives with his wife and three children. (*Id.*). He completed the 9th grade and later completed his general equivalency degree. (*Id.* at 42). Spanish is his primary language, but he speaks, reads, and writes "a little bit" of English. (*Id.*). He has vocational training in construction and electricity. (*Id.*).

Lopez last worked in 2010 as a crew leader for a cleaning company, and currently receives welfare benefits and food stamps. (*Id.* at 43). He stopped working after he sustained a work related injury. (*Id.* at 43-44). Lopez unsuccessfully sought light work that was not so painful on his back and legs. (*Id.* at 44). Lopez explained that he is unable to work due to herniated discs, pinched nerves, and arthritis in his back. (*Id.* at 44-45). When Lopez makes a sudden movement or when he carries something, the pain becomes severe to the extent that injections were required. (*Id.* at 45). Lifting anything more than ten pounds causes pain. (*Id.*).

---

² In Lopez's motion he states that on January 10, 2014, he requested a review of the ALJ's decision by the Appeals Council, and on October 7, 2014, the Appeals Council vacated the ALJ's hearing decision and remanded the case to the ALJ. (D.I. 12 at 1). The record does not support this statement. Rather, the record reflects that on January 10, 2014, Lopez submitted a request for hearing by an ALJ (D.I. 9-4 at 13-14), and on October 7, 2014, a notice of hearing issued advising Lopez that the hearing would take place on November 14, 2014 (*id.* at 29-50).

2

Lopez is left handed. (*Id.* at 46). He has a pinched nerve in the left shoulder area, his hands swell, and the joints in his hands bother him. (*Id.* at 45). Lopez has been told this could be arthritis and that he suffers from fibromyalgia. (*Id.* at 45-46). The pain affects his ability to use his arms or hands. (*Id.* at 46). Lopez explained that the left shoulder pain interferes with his ability to reach and he cannot freely move his shoulder. (*Id.* at 48-49). He testified that he can no longer pick up tools or use tools like he used to because his hands go numb and sometimes they "get kind of locked in place." (*Id.* at 59). Lopez's legs are very weak and he trips a lot. (*Id.* at 46). He has pain, arthritis in the left knee, joint pain all over, and radiant pain from his back. (*Id.*).

Lopez rates his pain as seven (on a scale of one to ten), and testified that it sometimes increases to ten. (*Id.*). He takes medication for the pain: Ibuprofen daily, a muscle relaxer at night, and Percocet as needed during the day. (*Id.* at 47). Lopez takes Percocet for one or two weeks when the pain is severe. (*Id.*). Lopez has headaches and frequent lightheadedness due to the pinched nerves. (*Id.*). He does not have a psychological impairment that interferes with his ability to work. (*Id.*)

Lopez can walk no more than half a mile. (*Id.* at 48). When he walks further than that, his back "acts up", the pain increases, his legs get weak, and he starts to trip. (*Id.*). He can sit for one-half hour. (*Id.*). When he sits longer than that his legs go numb and his back hurts. (*Id.*). He can stand for ten or fifteen minutes and then has to sit down. (*Id.*) He is able to lift ten or fifteen pounds. (*Id.*) He can climb five to ten steps. (*Id.* at 49).

3

Lopez tries to sleep during the day because he cannot sleep at night. (Id. at 49). He does not do any household chores or yard work. (Id. at 49-50). He has no hobbies and he reads. (Id. at 50). Lopez exercises from time to time when he is not in a lot of pain. (Id. at 50-51).

### C. Plaintiff's Medical History, Condition, and Treatment

Lopez sustained a work related back injury in February 2012. (D.I. 9-8 at 2). A few days after he was injured, Lopez presented to the emergency room upon his employer's request for an assessment due to his continued complaints of pain. (Id.). An x-ray of the lumbar spine showed no abnormality. (Id. at 6, 50). Lopez was diagnosed with lumbar back strain and shoulder strain. (Id. at 3). Following the injury, Lopez received chiropractic treatment and physical therapy. (Id. at 32-45). An MRI taken on April 19, 2012, indicated well maintained disc height with slight desiccation of the cervical discs from C2/3 through C5/6, slight narrowing with desiccation of the L5/S1 disc with a central and left paracentral disc herniation impinging the thecal sac without stenosis. (Id. at 46, 52-53).

In late July 2013, Lopez presented to Westside Health to have disability forms filled out. (Id. at 17). The records indicate his last clinic visit was one year prior to that (i.e., 2012). (Id.) Nurse practitioner Paula Watson completed the form which indicates Lopez's conditions of desiccation of intervertebral disc, disc bulge, and lumbosacral disc herniation were expected to last six to twelve months and cause pain in the neck and lower back, all of which causes limitations in activities including an inability to sit, stand,

or walk for prolonged periods. (D.I. 9-8 at 29-30; D.I. 9-9 at 28-29, 38-39). A follow-up was scheduled for four weeks or sooner as needed. (D.I. 9-9 at 23).

On September 25, 2013, Lopez underwent a consultative examination by Irwin L. Lifrak, M.D. (D.I. 9-8 at 63-69). Upon examination Lopez had a slight limp and could not heel/toe walk, but he retained normal grip strength and normal muscle tone and had normal sensation. (*Id*. at 67). Dr. Lifrak's diagnostic impression was degenerative joint disease and possible disc damage that would account for Lopez's complaints of pain. (*Id*. at 68). Dr. Lifrak opined that within an 8-hour day, while taking usual and customary breaks and without the aid of an assistive device, Lopez is able to perform activities that may require him to walk either indoors or outdoors. (*Id*. at 68). He further opined that Lopez could climb stairs, sit and stand for 6 hours in an 8-hour day, and lift as much as 10 pounds. (*Id*. at 69).

When Lopez was seen at Westside Health on September 27, 2013, his condition had not changed. (D.I. 9-9 at 22). Lopez was taking Ibuprofen for pain with very little relief. (*Id*.).

On October 2, 2013, John Shane, M.D., a state agency physician, reviewed the evidence and concluded that Lopez could perform a range of medium exertional work. (D.I. 9-3 at 2-11). On December 26, 2013, Vinod K. Kataria, M.D., also a state agency physician, reviewed the evidence and Dr. Shane's assessment and affirmed the assessment as written. (*Id*. at 14-24).

5

On November 13, 2013, Lopez presented at Westside Health for a follow-up visit regarding his complaints of back pain. (D.I. 9-9 at 16). He reported that he continued to experience back pain, had "decreased sensation on lateral thighs," but was not taking anything for the pain. (Id.). Lopez reported that Tramadol and Ibuprofen did not help with the pain, and he was willing to try something else but was afraid of becoming addicted to narcotics. (Id.). Lopez reported an inability to sleep or walk around due to pain. (Id.). He requested a referral to a different orthopaedist. (Id. at 18).

Lopez was seen by orthopaedist Stephen Malone, M.D., on December 2, 2013. (D.I. 9-9 at 2-13). Dr. Malone examined Lopez and reviewed his August 27, 2013 cervical and lumbar MRIs. (D.I. 9-8 at 25-27; D.I. 9-9 at 3-10, 42, 44, 52-53). Dr. Malone determined that Lopez's symptoms and presentation did not correlate with the MRI studies. (D.I. 9-9 at 9). Dr. Malone advised Lopez that he did not think there was any need for surgery and that Lopez was doing more harm than good by engaging in a sedentary lifestyle. (Id. at 9). Dr. Malone advised Lopez that he could resume his normal activities, take his anti-inflammatory of choice, and taper the use of narcotics for pain control. (Id.). He advised Lopez to continue on efforts towards weight loss, opining that it may be a contributing factor to the back pain. (Id.) Lopez was to return to see Dr. Malone in two months. (Id.).

Jason Silversteen, M.D., of Christiana Care Neurology Specialists, examined Lopez on January 23, 2014. (D.I. 9-10 at 12-15; D.I. 9-11 at 24-27). Lopez complained of worsening neck and low back pain, sensory symptoms, and subjective

6

weakness of the left upper and lower extremities. (*Id.*). Repeat cervical and lumbar spine MRIs were ordered based upon the worsening of symptoms. (*Id.*) At Lopez's follow-up visit on June 12, 2014, it was noted that EMG testing was normal and both MRIs revealed stable findings. (D.I. 9-10 at 2, 7, 10-11). Lopez reported having some anxiety due to persistent pain, not sleeping well at night, having more low back spasms, and taking Tramadol as needed. (*Id.* at 2).

Dr. Silversteen referred Lopez for evaluation of low back pain and neck pain. (D.I. 9-10 at 16; D.I. 9-11 at 14). On July 29, 2014, Kartik Swaminathan, M.D, opined that Lopez suffers from left C5-6 facet and stenosis. (D.I. 9-10 at 16). Dr. Swaminathan prescribed medication and planned to perform cervical facet/medial branch injections to further diagnose and treat Lopez's condition. (D.I. 9-10 at 16; D.I. 9-11 at 34). Lopez received sacroiliac joint injections on September 3, 2014, and a lumbar transforaminal epidural steroid injection on October 1, 2014, but they did not provide Lopez relief. (D.I. 9-11 at 39-41, 47-48, 55-56, 59-63). Dr. Swaminathan referred Lopez for a neurosurgical consult. (*Id.* at 63). Dr. Swaminathan discussed with Lopez a psychiatric visit "to consider functional causes of pain." (*Id.*).

Lopez presented to Gauray Mehta, M.D., on October 22, 2014, with complaints of lumbar back pain and fecal incontinence. (D.I. 9-9 at 54-57). The reason for the visit was "cortisone shot in back causing issues, joint pain, burning sensation in L arm, numbness in legs, pain in testicles." (*Id.* at 54). Lopez was taken off Tramadol and Cyclobenzaprine (used to treat muscle spasms) and prescribed Percocet. (*Id.* at 57).

7

When Lopez was seen on October 27, 2014, he was advised to wean off Percocet. (*Id.* at 6). Records note he had an appointment with a neurosurgeon. (*Id.*).

Lopez presented to neurologist Pawan Rastogi, M.D., on October 29, 2014. (D.I. 9-9 at 62-64; D.I. 9-10 at 18-20). Dr. Rastogi assessed Lopez as having significant lumbar radiculopathy related to a central disc protrusion at L5-S1. (D.I. 9-9 at 64; D.I. 9-10 at 20). Dr. Rastogi did not recommend surgery, but recommended that Lopez continue to live with his symptoms for as long as possible, conservative management with exercises, and pain management. (*Id.*).

Throughout 2014, Lopez continued to be seen at Westside Health. (D.I. 9-12 at 2-48). In March, April, May, July, and October, Lopez complained of knee pain. (*Id.*). Lopez attended physical therapy, and underwent an MRI that revealed a ganglion cyst. (*Id.* at 3-7, 11-12, 26-27, 39-40). Lopez was seen by an orthopaedist on December 2, 2014 with complaints of left knee pain, moderate to severe. (D.I. 9-9 at 79). The orthopaedist diagnosed mild infra-patellar bursitis and patellar tendinopathy. (*Id.*). He provided Lopez with a knee brace, recommended home exercises, and ice as needed. (*Id.*)

On April 1, 2015, Lopez was seen by rheumatologist Eric M. Russell, D.O. (D.I. 9-12 at 43-48). Lopez complained of joint pain for five months and ongoing back pain. (*Id.* at 43). Dr. Russell identified multiple diffuse tender points suggestive of fibromyalgia and prescribed Naproxen. (*Id.* at 45-46). When Lopez sought review by the Appeals Council, he submitted as evidence a letter from Dr. Russell, dated July 24,

2015. (D.I. 9-12 at 48). Dr. Russell identified himself as Lopez's treating rheumatologist, referred to a diagnosis of fibromyalgia, and indicated the condition was being treated with medication. (*Id.*). Dr. Russell stated that fibromyalgia "causes diffuse muscle and joint pain that can limit functionality of the joints." (*Id.*).

### D. Vocational Expert's Testimony

A vocational expert testified at the administrative hearing. (D.I. 9-2 at 51-55). The VE characterized the work performed by Lopez during the last fifteen years as: light semiskilled with a Specific Vocational Preparation ("SVP")[3] of 4; heavy semiskilled with an SVP of 4; light skilled with an SVP of 6; and medium skilled with an SVP of 6. (*Id.* at 52-53).

The VE was posed a hypothetical: could an individual of Lopez's age, education, and work history who can perform work at the light exertional level, who can occasionally climb ramps, stairs, ladders, ropes, and scaffolds, who can occasionally balance, stoop, kneel, crouch, and crawl and who can have occasional exposure to extreme cold, vibration, and unprotected heights, perform any of Lopez's past work. (*Id.* at 53). The VE responded the individual could perform Lopez's past jobs of quality

---

[3] "Specific Vocational Preparation is defined as the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." *Conover v. Colvin*, 2014 WL 7012502 n.16 (D.N.J. Dec. 12, 2014) (quoting Dictionary of Occupational Titles, App'x C, 1991 WL 688702).

9

control and housekeeping supervisor. (*Id.*). The VE testified that at the light unskilled level, the individual could also perform jobs as a preassembler for printed circuit boards, garment folder, and housekeeper. (*Id.* at 53-54).

When asked if the individual at the light level of exertion could perform Lopez's past work when adding that the person could frequently reach with the dominant left arm and could frequently handle and finger with both arms, the VE responded the individual could perform past work as a housekeeping supervisor and quality control. (*Id.* at 54). Other jobs at this level that would accommodate the additional limitations include housekeeper, inspector, and sorter. (*Id.* at 55). The VE testified that if the individual was limited to sedentary unskilled work he could perform work as a taper for printed circuit boards and as a final assembler for bench work. (*Id.* at 54).

## II. LEGAL STANDARD

The Court must uphold the Commissioner's factual decisions if they are supported by "substantial evidence." *See* 42 U.S.C. § 405(g); *see Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988). Substantial evidence does not mean a large or a considerable amount of evidence. *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citing *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Rather, it has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

Credibility determinations are the province of the ALJ. See Van Horn v. Schweiker, 717 F.2d 871, 873 (3d Cir. 1983). They should be disturbed on review only if they are not supported by substantial evidence. Pysher v. Apfel, 2001 WL 793305, at *3 (E.D. Pa. July 11, 2001).

### III. REGULATORY FRAMEWORK

Within the meaning of social security law, a "disability" is the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death, or which has lasted or can be expected to last, for a continuous period of not less than 12 months. See 42 U.S.C. § 423(d)(1)(A). To be found disabled, an individual must have a "severe impairment" which precludes the individual from performing previous work or any other "substantial gainful activity which exists in the national economy." See 20 C.F.R. § 404.1505. The claimant bears the initial burden of proving disability. See 20 C.F.R. § 404.1512(a); Podeworny v. Harris, 745 F.2d 210, 217 (3d Cir. 1984). To qualify for disability insurance benefits, the claimant must establish that he was disabled prior to the date he was last insured. See 20 C.F.R. § 404.131; Matullo v. Bowen, 926 F.2d 240, 244 (3d Cir. 1990).

To determine disability, the Commissioner uses a five-step sequential analysis. See 20 C.F.R. § 404.1520; Plummer v. Apfel, 186 F.3d 422, 427-28 (3d Cir. 1999). The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five. Smith v. Commissioner of Soc.

Sec., 631 F.3d 632, 634 (3d Cir. 2010). If a finding of disability or non-disability can be made at any point in the sequential process, the Commissioner will not review the claim further. See 20 C.F.R. § 404.1520(a)(4). At step one, the Commissioner must determine whether the claimant is engaged in any substantial gainful activity. See 20 C.F.R. § 404.1520(a)(4)(i) (mandating a finding of non-disability when claimant is engaged in substantial gainful activity). If the claimant is not engaged in substantial gainful activity, step two requires the Commissioner to determine whether the claimant is suffering from a severe impairment or a combination of impairments that is severe. See 20 C.F.R. § 404.1520(a)(4)(ii) (requiring finding of not disabled when claimant's impairments are not severe). If claimant's impairments are severe, at step three the Commissioner compares the claimant's impairments to a list of impairments (the "listings") that are presumed severe enough to preclude any gainful work.[4] See 20 C.F.R. § 404.1520(a)(4)(iii); Plummer, 186 F.3d at 428. When a claimant's impairment or its equivalent matches an impairment in the listings, the claimant is presumed disabled. See 20 C.F.R. § 404.1520(a)(4)(iii). If a claimant's impairment, either singly or in combination, fails to meet or medically equal any of the listings, the analysis continues to steps four and five. See 20 C.F.R. § 404.1520(d).[5]

---

[4]Additionally, at steps two and three, the claimant's impairments must meet the twelve month duration requirement. See 20 C.F.R. § 404.1520(a)(4)(ii-iii).

[5]Prior to step four, the Commissioner must assess the claimant's RFC. See 20 C.F.R. § 404.1520(a)(4). A claimant's RFC is "that which an individual is still able to do despite the limitations caused by his or her impairment[s]." Fargnoli v. Massanari, 247

12

At step four, the Commissioner determines whether the claimant retains the RFC to perform his past relevant work. See 20 C.F.R. § 404.1520(a)(4)(iv) (stating a claimant is not disabled if able to return to past relevant work). "The claimant bears the burden of demonstrating an inability to return to [his] past relevant work." Plummer, 186 F.3d at 428. If the claimant is unable to return to his past relevant work, step five requires the Commissioner to determine whether the claimant's impairments preclude him from adjusting to any other available work. See 20 C.F.R. §§ 404.1520(g), 416.920(g) (mandating that a claimant is not disabled if the claimant can adjust to other work); Plummer, 186 F.3d at 428. As previously stated, at this last step the burden is on the Commissioner to show that the claimant is capable of performing other available work before denying disability benefits. See id. In other words, the Commissioner must prove that "there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with his medical impairments, age, education, past work experience, and [RFC.]" Id. This determination requires the Commissioner to consider the cumulative effect of the claimant's impairments, and a vocational expert is usually consulted.

At step one, the ALJ found that Lopez met the insured status requirements of the Act through June 30, 2017, and that he had not engaged in substantial gainful activity

---

F.3d 34, 40 (3d Cir. 2001) (quoting Burnett v. Commissioner of Soc. Sec. Admin., 220 F.3d 112, 121 (3d Cir. 2000)).

since March 5, 2012, the alleged onset date. (D.I. 9-2 at 23). At step two, the ALJ found that Lopez has the following severe impairments: degenerative disc disease of the lumbar spine and obesity. (Id.). At step three, the ALJ determined that Lopez's impairments did not meet or equal the criteria of any of the impairments in the Listing of Impairments. (Id. at 24). The ALJ found that Lopez has

> the residual functional capacity to perform light work,[6] . . . except [he] could occasionally climb ramps, stairs, ladders, ropes and scaffolds and occasionally balance, stop, kneel, crouch and crawl. Additionally, the claimant can have only occasional exposure to extreme cold, vibration and unprotected heights.

(Id. at 25). At step four, the ALJ found that Lopez was able to perform his past relevant work as a housekeeping supervisor and that this work does not require the performance of work-related activities precluded by Lopez's RFC. (Id. at 29). In the alternative, at step five, based on the VE's testimony, the ALJ determined there were other jobs that

---

[6]"Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing or pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If some can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b). The Social Security Regulations define sedentary work as follows: "Sedentary-work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

exist in significant numbers in the national economy that Lopez is able to perform, and, therefore, he was not under a disability from March 5, 2012 through the date of the May 6, 2015 decision. (*Id.* at 29-30).

## IV. DISCUSSION

Lopez filed his Complaint *pro se*. Therefore, the Court must liberally construe his pleadings, and "apply the applicable law, irrespective of whether he has mentioned it by name." *Holley v. Department of Veteran Affairs*, 165 F.3d 244, 247-48 (3d Cir. 1999); *see also Leventry v. Astrue*, 2009 WL 3045675 (W.D. Pa. Sept. 22, 2009) (applying same in the context of a social security appeal).

Lopez states that the purpose of his motion is so the Court "will consider all the evidence and determine if [he] is granted disability." (D.I. 12 at p.2). The Commissioner argues that Lopez is not disabled because he remains capable of performing jobs that exist in the economy despite the limiting effect of his impairment. The Commissioner further argues that: (1) the evidence Lopez submitted to the Appeals Council does not warrant remand, (2) Lopez has not attempted to demonstrated this evidence meets the basic requirements necessary for review, (3) the letter Lopez submitted to the Appeals Council does not contain any medical opinion directly related to Lopez, and (4) remand for consideration of Lopez's Appeals Council evidence is not warranted. Finally, the Commissioner contends that substantial evidence supports the ALJ's decision denying Lopez's application for disability benefits.

### A. Substantial Evidence

15

The final responsibility for determining a claimant's residual functional capacity is reserved to the Commissioner. *See Breen v. Commissioner of Soc. Sec.*, 504 F. App'x 96 (3d Cir. 2012) (citing 20 C.F.R § 404.1546(c)). Here, the ALJ considered the effects of Lopez's condition in relation to his ability to perform work. The ALJ found that Lopez has the severe impairments of degenerative disc disease of the lumbar spine and obesity.

It is clear in reading the ALJ's decision that he thoroughly reviewed Lopez's longitudinal treatment history. (D.I. 9-2 at 21-31). Lopez stated he was unable to work due to back pain, high blood pressure, left knee problems, left wrist injury, left shoulder, scoliosis and a herniated disc. Lopez takes Ibuprofen, a muscle relaxer at night and Percocet as needed, with no reported side effects. Medical records indicate he has only conservatively treated his back. An orthopedist advised Lopez to resume normal activities. A neurosurgeon advised Lopez to pursue conservative management of his back impairment. In addition, objective studies, including MRIs, nerve conduction studies, and EMG studies do not support Lopez's alleged functional limitations. The ALJ noted that Lopez had recently seen a rheumatologist who observed Lopez to have multiple diffuse tender points in all his extremities "suggestive" of fibromyalgia.

In assessing Lopez's physical residual functional capacity, the ALJ afforded significant weight to the opinion of State agency medical consultant Dr. Lifrak. Dr. Lifrak found Lopez could sit six hours out of an eight-hour workday, or could stand six hours out of an eight-hour workday, and could lift ten pounds with either hand on a

regular basis. (D.I. 9-8 at 69). The ALJ noted, in particular, that Dr. Lifrak examined Lopez personally and his opinion is consistent with the medical evidence as a whole and consistent with his reported clinical findings. While the assessment occurred prior to finding that Lopez's condition was "suggestive of fibromyalgia," the ALJ did not "elevate [his] own medical opinion over those of [reporting] physicians, but rather made a finding based on all of the evidence in the record, including evidence not considered by the . . . state agency reviewing physician[s]." See Callahan v. Colvin, 2014 WL 7408700, at *1 n.1 (W.D. Pa. 2014).

Finally, at the time of the ALJ's decision, Lopez had not been diagnosed with fibromyalgia. That diagnosis did not appear until Lopez sought review by the Appeals Counsel. Regardless, in evaluating fibromyalgia, courts acknowledge that "the symptoms of the disease are entirely subjective" and medical testing may not be able to assess its severity. Singleton v. Astrue, 542 F. Supp. 2d 367, 377 (D. Del. 2008). Because of the subjectivity of the symptoms of fibromyalgia, the credibility of a claimant's testimony is paramount when evaluating whether a claimant's fibromyalgia impairment is disabling. Singleton, 542 F. Supp. 2d at 378.

The ALJ's thorough assessment of Lopez's medical condition demonstrates his understanding of his medical conditions. The ALJ fully detailed Lopez's subjective complaints of pain and his testimony regarding daily living activities, and then provided a detailed explanation of why he found Lopez not entirely credible and his subjective complaints not fully persuasive. (D.I. 9-2 at 28).

17

The substantial evidence of record supports the ALJ's residual functional capacity assessment for light work with limiting factors such as: (1) occasional climbing ramps, stairs, ladders, ropes, and scaffolds; (2) occasional balancing, stooping, kneeling, crouching, and crawling; and (3) occasional exposure to extreme cold, vibration, and unprotected heights. The ALJ thoroughly analyzed the medical evidence, considered the medical opinions, and appropriately relied upon the testimony of the VE. Accordingly, the Court finds that substantial evidence supports the ALJ's ruling and his evaluation of Lopez's residual functional capacity.

### B. Sentence Six Remand

Plaintiff submitted additional evidence to the Appeals Council that was not before the ALJ when he rendered his decision. While the Appeals Council considered the evidence, it denied Lopez's request for review.

When a claimant submits evidence after the ALJ's decision, that evidence cannot be used to challenge the ALJ's decision on the basis of substantial evidence. See Matthews v. Apfel, 239 F.3d 589, 594 (3d Cir. 2001). Pursuant to 42 U.S.C. § 405(g), sentence six, this Court may order a remand based upon evidence submitted after the ALJ's decision, but only if the evidence satisfies three prongs: (1) the evidence is new; (2) the evidence is material; and (3) there was good cause why it was not previously presented to the ALJ. Matthews, 239 F.3d at 593.

Lopez has not demonstrated that the evidence is new and/or material. In addition, Lopez provided no explanation, much less good cause, for his failure to present the evidence to the ALJ. The hearing was held April 15, 2015. Lopez saw Dr.

18

Russell on April 1, 2015. Regardless, Dr. Russell's letter lends no support to Lopez's claim for disability benefits. It explains the condition of fibromyalgia, but it does not indicate how the condition affects Lopez. Under 42 U.S.C. § 405(g), the Court's review is limited to the evidence in the record at the time of the ALJ's 2015 decision. The Court finds no basis to remand pursuant to the sixth sentence of 42 U.S.C. § 405(g).[7]

## V. CONCLUSION

For the reasons discussed above, the Court will: (1) deny Lopez's motion for summary judgment (D.I. 12); and (2) grant the Commissioner's cross-motion for summary judgment (D.I. 13).

A separate order will be entered.

---

[7]Plaintiff has available the option of filing a new application should he believe the new evidence supports an award for disability insurance benefits. See 20 C.F.R. § 416.330(b).